UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THEODORE JAMES ADAMS, JR.,

                Plaintiff,

         v.                                  **MEMORANDUM AND ORDER**

ANDREW SAUL, COMMISSIONER OF        20-CV-818 (RPK)
SOCIAL SECURITY,

                Defendant.
------------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Theodore James Adams, Jr. challenges the Commissioner of Social Security's determination that he is not disabled and thus ineligible for disability insurance benefits under the Social Security Act. Plaintiff and the Commissioner have each moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the reasons below, plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

### I.   Statutory and Regulatory Framework

      Federal disability insurance benefits are available to individuals who are "disabled." 42 U.S.C. § 423 *et seq*. The Social Security Act defines the term "disability" to mean an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

*Id.* § 423(d)(1)(A). The "physical or mental impairment" must stem from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner of Social Security utilizes a five-step process to determine whether a claimant is "disabled" as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). If "an individual is found to be disabled (or not) at any step, the Commissioner is not required to proceed to the next step." *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The five-step disability analysis proceeds as follows:

1. The Commissioner must first determine whether the claimant is engaged in "substantial gainful activity." *Schillo v. Kijakazi*, 31 F.4th 64, 70 (2d Cir. 2022); *see* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. If the claimant is not engaged in substantial gainful activity, the Commissioner must then determine whether the claimant has a "severe physical or mental impairment, or combination of severe impairments" that limits the claimant's ability to work. *Schillo*, 31 F.4th at 70; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. If the Commissioner finds the claimant has a severe impairment or combination of severe impairments, the Commissioner next considers "whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Schillo*, 31 F.4th at 70; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant has a listed impairment, the Commissioner will deem the claimant disabled and conclude the disability analysis. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. If the claimant does not have a listed impairment, the Commissioner must determine "whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of [the claimant's] past relevant work." *Schillo*, 31 F.4th at 70; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Finally, if the claimant is unable to perform his or her past relevant work, the Commissioner must determine "whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience." *Schillo*, 31 F.4th at 70; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden of proof for this analysis lies with the claimant for the first four steps of the inquiry but shifts to the Commissioner for the final step. *See Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019).

## II.     Plaintiff's Medical Care and Benefits Application

Plaintiff was born on May 30, 1968.  Certified Administrative Record 56 ("AR") (Dkt. #9).  He has two masters-level degrees and an addictions-counseling certification.  *Id*. at 57.  Between 2002 and 2015, Plaintiff worked as the director of an addiction outpatient center, as the clinical director of a residential treatment center, as a department chair at a community college, and as an adjunct professor.  *Id*. at 53–54, 76–79, 194.  Plaintiff stopped working on September 1, 2015.  *Id*. at 53–54.

In September 2014, plaintiff began seeking care from psychiatrist Edward L. Valentine, M.D.  AR 283.  Plaintiff complained of difficulty focusing, excessive worrying, and anxiety.  *Id*. at 283–85.  He also reported feeling paranoia and mistrust.  *Id*. at 283.  Dr. Valentine noted that plaintiff had good insight and judgment, normal cognitive function, and mildly hyperactive psychomotor activity.  *Id*. at 284.  Dr. Valentine prescribed medication for plaintiff's anxiety and depression.  *Id*. at 283–84.

Plaintiff continued seeing Dr. Valentine.  *See id*. at 251–82.  In October 2014, plaintiff reported that he was fired from his full-time job but that he felt "on some level relieved but on other levels sad and disappointed."  *Id*. at 281.  In November 2014, plaintiff stated that he felt "very distressed," and Dr. Valentine concluded that plaintiff was "working through the serious losses of his job and his self esteem and the possible long term impact on his career."  *Id*. at 279.  The following month, Dr. Valentine observed that plaintiff was "doing better," *id*. at 278, and plaintiff stated in May 2015 that he was "doing good, definitely better," *id*. at 275.  Plaintiff later reported feeling stress from caring for his mother, who was suffering from dementia.  *Id*. at 271.  A mental status examination in January 2016 showed that plaintiff was doing "reasonably well" and that "his mood was definitely better."  *Id*. at 268.  And in April 2016, Dr. Valentine noted that

3

plaintiff was "doing OK despite the challenge of dealing with his mother's deteriorating . . . disease." *Id*. at 267.

Over the next few months, plaintiff reported an increase in symptoms and said he felt unable to apply for jobs and intended to apply for disability. *Id*. at 263–66. Mental status examinations by Dr. Valentine showed a dysthymic mood, anxious affect, and pressured thought process but without "the texture of true psychotic thinking." *Id*. at 266. Plaintiff reported low motivation but stated that he did better when taking ADHD medication consistently. *Id*. at 265. Plaintiff also reported having difficulties with depressive symptoms and paranoid tendencies. *Id*. at 263. He claimed to feel unsafe around people and felt that other people were trying to harm him. *Id*. at 263. Dr. Valentine found that plaintiff was generally cooperative, that he had grossly normal cognitive functioning and memory, and that he had good insight and judgment. *Id*. at 263, 265–68, 270–83. Plaintiff's mother died in 2017, and plaintiff "state[d] he does definitely feel sad but he does feel relief." *Id*. at 402. Dr. Valentine opined that plaintiff "is adjusting fairly well to his mother's death. . . . We agreed not to make any changes in his treatment at this time." *Ibid*.

Plaintiff applied for disability insurance benefits on January 9, 2017. *Id.* at 92. In his application, plaintiff claimed that he became disabled on December 14, 2014, due to "depression with psychotic features, anxiety, ADHD (combined type), PTSD, and arthritis of the cervical spine." *Id.* at 92–93. Plaintiff filed a function report in which he stated that he stayed home all day unless he had an appointment, that he took care of his mother, that he heated pre-prepared meals daily and could perform easy chores, and that he experienced five to six panic attacks per week. *Id*. at 205–13. Plaintiff later amended his claimed onset date to September 1, 2015. *Id*. at 53.

4

In connection with his application, plaintiff attended a consultative examination with Clementina N. Porcelli, Ph.D., in February 2017. *Id*. at 366. Plaintiff reported having a history of psychiatric symptoms that increased following his mother's illness. *Id*. at 367. He appeared well groomed and dressed appropriately with normal motor behavior and appropriate eye contact at the evaluation. *Id*. at 368. Plaintiff had adequate speech and normal thought processes with no evidence of delusions or paranoia in the evaluation setting. *Id*. at 368. Dr. Porcelli opined that plaintiff was "moderately limited with regard to interacting adequately with supervisors, coworkers, and the public," that his "[t]hought processes were coherent," and that he had "average" cognitive functioning. *Id*. at 368–70. Dr. Porcelli diagnosed plaintiff with "[a]ttention deficit hyperactivity disorder, combined type," "[u]nspecified schizophrenia spectrum and other psychotic disorder," "[m]ajor depressive disorder, recurrent episodes, moderate," "[s]ocial anxiety disorder," and "[p]anic attack," among others. *Id*. at 370.

In March 2017, G. Kleinerman, M.D., a state agency psychiatric consultant, reviewed the record and opined that plaintiff's impairments, though they existed, did not meet or equal the severity of a listed impairment. *See id*. at 96–102. Dr. Kleinerman also opined that there was "[n]o evidence" that plaintiff was limited in his "ability to carry out very short and simple instructions" and that plaintiff was "[n]ot significantly limited" in his "ability to carry out detailed instructions." *Id*. at 99.

Dr. Valentine submitted an opinion using a check-mark form. *Id*. at 440–42. He opined that plaintiff was markedly impaired in his ability "to understand and remember detailed instructions," "to carry out detailed instructions," and "to work in coordination with and proximity with others without being distracted by them," among others. *Id*. at 440–41.

5

### III. Social Security Administration Proceedings

The Social Security Administration initially denied plaintiff's application in March 2017. *Id*. at 107. Plaintiff then timely requested a hearing before an administrative law judge ("ALJ"). *See id*. at 119–121. The hearing was held in November 2018. *Id*. at 49.

At the hearing, plaintiff testified that he could not work because of multiple psychological issues, including "depression with psychotic features, panic disorder, social anxiety, . . . post traumatic stress disorder, [and] ADHD combined type." *Id*. at 58. Plaintiff stated that he struggled to sleep and get out of bed most days. *Id*. at 59–60. He testified that he experienced three to four panic attacks per week and that he has missed appointments because of his panic attacks. *Id*. at 60, 62. Plaintiff reported experiencing "psychotic delusions" in public. *Id*. at 63. He also stated that he has difficulty concentrating and is easily confused. *Ibid*..

A vocational expert also testified at the hearing. The ALJ posed hypothetical questions to the expert witness:

> Q: Assume that [a] person can lift and carry 20 pounds occasionally, 10 pounds frequently. They can stand and walk for six hours. They can sit for six hours. They can occasionally stoop, crouch, kneel and crawl. They can occasionally climb stairs and ramps, but cannot climb ladders, ropes or scaffolds. They can perform simple, routine, repetitive work in an environment with few, if any, workplace changes, and they can occasionally interact with supervisors, coworkers and the public. Would this person be able to do any of the past work?
> A: No, this is just a light, unskilled [residual functional capacity]. There's no light, unskilled past work.
> …
> Q: Okay. So would there be other jobs in the national economy that the person could do?
> A: Yes. Other appropriate types of positions would be positions such as housekeepers, . . . mailroom clerks, . . . office helpers, . . . [and] merchandise markers.

AR 87–88.

## IV. The ALJ's Decision

The ALJ denied plaintiff's application for disability insurance benefits in November 2018. AR 15–28. The ALJ concluded that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. *Id.* at 15. In reaching her decision, the ALJ proceeded through the five-step analysis set forth in 20 C.F.R. § 404.1520(a). Her factual findings included the following:

> **Step One**. Plaintiff has not engaged in substantial gainful activity since September 1, 2015, his amended alleged onset date. AR 17; *see* 20 C.F.R. § 404.1571 *et seq*.
>
> **Step Two**. Plaintiff has the following severe impairments: "depressive disorder with seasonal pattern; anxiety disorder; attention deficit hyperactivity disorder (ADHD); generalized anxiety disorder with panic attacks; post-traumatic stress disorder (PTSD); major depressive disorder; social anxiety disorder; unspecified schizophrenia spectrum and other psychotic disorder; traits of anti-social personality disorder; alcohol dependence in sustained remission; cocaine dependence in sustained remission; cannabis dependence in remission; nicotine and opioid dependence; degenerative joint disease of the cervical spine and straightening of the lumbosacral spine." AR 17–18; *see* 20 C.F.R. § 404.1520(c).
>
> **Step Three**. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of listing 12.04 (depressive, bipolar, and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders), among others, in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18–19; *see* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.
>
> **Step Four**. Plaintiff has the residual functional capacity "to perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six of eight hours; and sit for six of eight hours. The claimant can occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs, but he cannot climb ladders, ropes, or scaffolds. The claimant can perform simple, routine, repetitive tasks in an environment with few, if any, workplace changes, and can occasionally interact with supervisors, co-workers, and the public. Beginning July 14, 2017, the claimant's residual functional capacity changed such that he could no longer provide direct customer service. Since October 11, 2018, he has also been unable to perform tasks requiring teamwork, in addition to the limitations described above." AR 21. The ALJ gave "only some weight" to Dr. Valentine's check-mark opinion. *Id.* at 25. The ALJ concluded that plaintiff is unable to perform any past relevant work. *Id.* at 26; *see* 20 C.F.R. § 404.1565.
>
> **Step Five**. After consulting the vocational expert at the administrative hearing, the ALJ concluded that there are jobs that exist in the national economy that plaintiff

7

can perform. These include housekeeper, mailroom clerk, office helper, merchandise marker. AR 26–27; *see* 20 C.F.R. §§ 404.1569, 404.1569a.

Plaintiff sought review of the ALJ's decision from the Social Security Administration's Appeals Council. AR 1. The council denied plaintiff's appeal in December 2019, providing plaintiff with a final decision by the Commissioner. *Ibid*. Plaintiff then timely filed this action.

## STANDARD OF REVIEW

Claimants who are denied disability insurance benefits by the Social Security Administration may seek judicial review. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court does not "decide *de novo* whether a claimant was disabled" or "answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Administration] regulations." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Instead, the Court's review is limited to determining whether the Commissioner's decision is free of legal error and supported by substantial evidence. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Ibid*. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ibid*. (citation omitted). In applying the substantial-evidence standard, the Court must "defer[] to the presiding ALJ, who has seen the hearing up close." *Id.* at 1157. If substantial evidence supports the Commissioner's findings, such findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013).

8

After completing its review, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g).

**DISCUSSION**

Plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's motion is granted. Plaintiff contends that the Commissioner erred by: (1) concluding that plaintiff's impairments do not meet or equal listings 12.04 or 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) failing to give proper weight to Dr. Valentine's opinion; and (3) posing questions to the vocational expert that allegedly lack a proper foundation. Pl.'s Mot. 8–15 (Dkt. #10-1). But as explained below, the Commissioner applied the law correctly and made factual findings that were supported by substantial evidence. Plaintiff's contrary arguments lack merit.

**I.   Substantial Evidence Supports the ALJ's Conclusion that Plaintiff's Impairments Do Not Meet or Equal Listings 12.04 or 12.06.**

The ALJ properly concluded that plaintiff's impairments do not meet or medically equal the criteria of listings 12.04 (depressive, bipolar, and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders) in 20 C.F.R. Part 404, Subpart P, Appendix 1. At all times relevant to this case, in order to meet listing 12.04 or listing 12.06, a claimant's impairments were required to satisfy the criteria in either (i) paragraphs A and B, *or* (ii) paragraph C of those listings. *See* 20 C.F.R. Part 404, Subpart P, App'x 1 §§ 12.04, 12.06 (2017). An impairment meets the requirements of a listing, as relevant here, "when it satisfies all of the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). An impairment is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a).

Substantial evidence supports the ALJ's conclusion that plaintiff's impairments did not satisfy the criteria in paragraph B, which requires for both listings:

9

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (*see* 12.00F):
> 1. Understand, remember, or apply information (*see* 12.00E1).
> 2. Interact with others (*see* 12.00E2).
> 3. Concentrate, persist, or maintain pace (*see* 12.00E3).
> 4. Adapt or manage oneself (*see* 12.004E4).

20 C.F.R. Part 404, Subpart P, App'x 1 §§ 12.04, 12.06.  A limitation is "extreme" if it causes the claimant to be unable "to function in this area independently, appropriately, effectively, and on a sustained basis," *id*. § 12.00(F)(2)(e), and a limitation is "marked" if it causes the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis [to be] seriously limited," *id*. § 12.00(F)(2)(d).  Here, the ALJ's finding that plaintiff did not suffer the requisite extreme or marked limitations is supported by substantial evidence.

First, as to plaintiff's ability to understand, remember, and apply information, Dr. Valentine consistently found plaintiff to have grossly normal cognitive functioning and memory, AR 263, 265–68, 270–83, and Dr. Porcelli found plaintiff to have "intact" memory skills and "average" cognitive functioning, *id*. at 369.  Second, as to plaintiff's ability to interact with others, Dr. Valentine noted that plaintiff was generally cooperative with good insight and judgment, *id*. at 263, 265–68, 270–83, and Dr. Porcelli found that plaintiff had an adequate "manner of relating, social skills, and overall presentation," *id*. at 368.  Third, as to concentrating, persisting, or maintaining pace, Dr. Valentine concluded that plaintiff's "concentration is good" when he consistently takes medication, *id*. at 273, and Dr. Porcelli concluded that plaintiff's "[t]hought processes were coherent and goal directed" and that his "[a]ttention and concentration were intact," *id*. at 368–69.  Finally, as to adapting or managing oneself, plaintiff reported that he was able to care for his ailing mother, prepare meals, and tend to personal care.  *Id*. at 206–07.  Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff did not have "[e]xtreme limitation

10

of one, or marked limitation of two" of the aforementioned areas of mental functioning.  20 C.F.R. Part 404, Subpart P, App'x 1 §§ 12.04, 12.06 (2017).

Substantial evidence also supports the ALJ's conclusion that plaintiff did not satisfy the paragraph C criteria.  For both listings, paragraph C requires:

> [A] medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (*see* 12.00G2b); *and*
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (*see* 12.00G2c).

*Id*. §§ 12.04, 12.06.  Here, the medical record supports the ALJ's conclusion that plaintiff had more than a "minimal capacity to adapt to changes in [his] environment [and] to demands that are not already part of [his] daily life."  *Ibid*.  During the period at issue, plaintiff lost his job and his mother passed away, AR 280, 402, but plaintiff continued tending to personal care and preparing meals, *id*. at 263, 265, 273, 402.  Moreover, Dr. Valentine described plaintiff as stable and did not make significant changes to plaintiff's prescriptions.  *Id*. at 262–68, 395–402.

Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff's impairments did not meet or medically equal listings 12.04 or 12.06 in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**II.  Substantial Evidence Supports the ALJ's Weighing of Dr. Valentine's Opinion.**

The ALJ properly discounted the opinion of plaintiff's treating psychiatrist, Dr. Valentine.

For disability claims filed prior to March 27, 2017, like plaintiff's, ALJs were required to apply the "treating physician rule."  *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).  That rule directs ALJs to give "controlling weight" to a treating physician's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

11

the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). An ALJ "must articulate 'good reasons' to rebut the presumption of controlling deference conferred on the treating physician's opinion." *Colgan v. Kijakazi*, 22 F.4th 353, 360 (2d Cir. 2022). If an ALJ reasonably finds that the treating physician's medical opinion is "not entitled to 'controlling weight'" under the treating physician rule, then the ALJ "must determine how much weight, if any," to assign the treating physician's opinion, by "'explicitly' apply[ing]" the so-called "*Burgess* factors," which include "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95–96 (2d Cir. 2019) (citation omitted); *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). Failure to "explicitly" apply those factors when assigning weight "is a procedural error" that requires remand unless the Commissioner has otherwise "provided 'good reasons'" for the weight assigned to the evidence. *Estrella*, 925 F.3d at 96 (citation omitted). "If, however, a searching review of the record" establishes "that the substance of the treating physician rule was not traversed," then the error is harmless. *Ibid.* (citation and quotation marks omitted).

The ALJ did not run afoul of the treating physician rule by declining to give controlling weight to Dr. Valentine's opinion, because the ALJ articulated good reasons for that decision. *See* AR 25. The ALJ reasoned that Dr. Valentine's opinion was "inconsistent with the largely normal objective findings on Dr. Valentine's examinations, as well as [plaintiff's] mostly normal consultative examination." *Ibid*. For example, Dr. Valentine opined that plaintiff was markedly impaired in his ability to maintain concentration for extended periods, *id*. at 441, but Dr. Valentine recorded on several previous examinations that plaintiff had good concentration, *id*. at 267, 268, 276, 402. Similarly, Dr. Valentine opined that plaintiff was markedly limited in his ability to carry

12

out detailed instructions, *id*. at 441, but Dr. Kleinerman and Dr. Porcelli both opined that plaintiff did not have significant limitations in his ability to remember and apply complex instructions, *id*. at 99, 370. The ALJ permissibly discounted Dr. Valentine's opinion on this basis. *See* 20 C.F.R. § 404.1527(c)(4); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion, . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given.").

Moreover, as the ALJ observed, Dr. Valentine's opinion—which was submitted in check-box form—was "not accompanied with any rationale or a clinical narrative." AR 25. The Second Circuit has held that "a treating physician's medical opinion is not entitled to controlling weight where it is provided in a check-box form and is unaccompanied by meaningful medical evidence in the administrative record." *Colgan*, 22 F.4th at 361 (citing *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004)); *see Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019) ("The ALJ here provided 'good reasons' for giving the treating physicians' opinions less weight, including that their opinions were 'merely checkbox forms that offer little or nothing with regard to clinical findings and diagnostic results,' and, further, were inconsistent with the moderate findings reflected in the doctors' notes.") (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(3). The ALJ did not err in discounting a check-box opinion unaccompanied by any rationale or clinical narrative based on its conflict with the findings on examinations by both the treating physician and other doctors.

Plaintiff contends that the ALJ erred by failing to explicitly analyze the *Burgess* factors when deciding to give Dr. Valentine's opinion "some weight." Pl.'s Mot. 13 (quoting AR 25). But any procedural error was harmless because "a searching review of the record" establishes "that

13

the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96 (citation omitted).  The ALJ's decision makes clear that she understood the facts relevant to the *Burgess* framework.  For example, the ALJ accurately described the frequency, length, nature, and extent of plaintiff's treatment by stating that plaintiff had seen Dr. Valentine "once every three months for about thirty minutes at a time," AR 20, and the ALJ properly recognized that Dr. Valentine was a treating psychiatrist, AR 23.  Moreover, the ALJ "provided good reasons for [her] weight assignment," *Holler v. Saul*, 852 F. App'x 584, 585 (2d Cir. 2021) (quoting *Estrella*, 925 F.3d at 96), by explaining that Dr. Valentine's opinion was "unsupported by the evidence in the record," "not accompanied with any rationale or a clinical narrative," and "inconsistent with the largely normal objective findings on Dr. Valentine's examinations, as well as [plaintiff's] mostly normal consultative examination," AR 25.  Because "the ALJ provided a detailed explanation for her decision to give less than controlling weight to a treating physician's opinions, which [a judge] can easily understand from a review of the" administrative record, "the ALJ's failure to explicitly discuss each of the four factors" in *Burgess* "is not *per se* reversible error." *Holler,* 852 F. App'x at 585–86 (holding that an ALJ permissibly gave "some weight" to a treating psychologist's opinions where the opinions "were unsupported by any treatment notes or explanation" and "were contradicted by [the psychologist's] own previous treatment notes as well as other evidence in the record," despite failure to explicitly discuss each *Burgess* factor); *see also Legg v. Colvin*, 574 F. App'x 48, 49 (2d Cir. 2014) (holding that an ALJ properly gave "little weight" to a treating physician's opinion where "the objective medical evidence, the reports of other physicians, and [the treating physician's] own treatment notes" did not support the opinion).

14

**III.     Substantial Evidence Supports the Hypothetical Questions the ALJ Posed to the Vocational Expert.**

The ALJ posed appropriate hypothetical questions to the vocational witness. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' and accurately reflect the limitations and capabilities of the claimant involved.'" *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal citation omitted). Here, the ALJ asked the vocational expert to assume that a hypothetical claimant could perform "simple, routine, repetitive work in an environment with few, if any, workplace changes, and they can occasionally interact with supervisors, coworkers and the public."* AR 87.

Substantial evidence supports the premise of the ALJ's hypothetical questions. As to plaintiff's ability to perform "simple, routine, repetitive work in an environment with few, if any, workplace changes," the medical record shows that plaintiff was able to care for his ailing mother and for a friend recovering from surgery. *Id*. at 272. Plaintiff was also found on multiple occasions to have grossly normal cognitive functioning as well as a logical and coherent thought process. *Id*. at 265, 268, 271, 273, 275, 277–79. Moreover, Dr. Kleinerman opined that there was "[n]o evidence" that plaintiff could not carry out "very short and simple instructions" and that plaintiff did not have significant limitations in his ability to carry out detailed instructions. *Id*. at 99. Similarly, Dr. Porcelli opined that plaintiff "can understand, remember, and apply simple direction and instruction without limitation" and "can understand remember and apply complex direction and instruction with mild limitation." *Id*. at 370. As to plaintiff's ability to "occasionally interact with supervisors, coworkers and the public," plaintiff reported in October 2015 that he was

---

* Plaintiff incorrectly states that the ALJ asked the vocational expert to assume that the claimant could perform tasks in a "low stress" setting. Mot. for J. on the Pleadings 14 (Dkt. #10).

15

enjoying some social contact and not having any significant avoidance behavior. *Id*. at 270. Similarly, Dr. Porcelli examined plaintiff and opined that "[h]e is moderately limited with regard to interacting adequately with supervisors, coworkers, and the public," *id*. at 370, and Dr. Kleinerman opined that plaintiff was moderately limited in his "ability to work in coordination with or in proximity to others without being distracted by them," *id*. at 99.

Accordingly, substantial evidence supports the hypothetical questions that the ALJ posed to the vocational expert.

## CONCLUSION

The ALJ's conclusion was legally sound and supported by substantial evidence. Accordingly, plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion is granted. The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and dismiss the complaint.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: May 25, 2023
       Brooklyn, New York